PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/15/98
THOMAS K. KAHN
CLERK

No. 97-8246

D.C. Docket No. 1:95-CV-2994-WBH


WILLIAM J. HALL, BARBARA LISSER, Individually
and on behalf of all others similarly situated,

Plaintiffs-Appellants,

versus


CORAM HEALTHCARE CORPORATION, JAMES M. SWEENEY,
PATRICK FORTUNE, SAM LENO,

Defendants-Appellees.


Appeal from the United States District Court for the
Northern District of Georgia

(October 15, 1998)


Before EDMONDSON and HULL, Circuit Judges, and CLARK, Senior Circuit Judge.


CLARK, Senior Circuit Judge:

## BACKGROUND

A complete account of the facts in this case is set out in <u>In re T2 Medical, Inc. Shareholder Litigation</u> ("<u>In re T2</u>").[1] Briefly, the appellants here were the plaintiff class members of a prior federal securities action that had resulted in a settlement with the defendants from that action, Coram Healthcare Corporation ("Coram") and two officers from a company that had merged with Coram. As part of the settlement agreement, appellants were issued over 2.5 million warrants to purchase Coram common stock at approximately $22 per share.[2] Several months after the settlement was final, Coram announced a second-quarter loss of over 66 million dollars, leading to a significant decrease in the value of the warrants.[3] Appellants alleged that during the pendency of the settlement, the defendants publicly made false and misleading statements and omitted material facts that led to an inflated price of their stock, and that they misrepresented the true financial condition and performance of the company.

---

[1]  130 F.3d 990 (11th Cir. 1997).

[2]  This price reflected an initial exercise price of $20.25 that was adjusted based on the average closing price for Coram common stock for the ten business days preceding the date on which the judgment became final.

[3]  The trading day following the announcement, the closing price of Coram common stock was $5.25 per share.

Appellants filed a Motion to Enforce Stipulation of Settlement, alleging numerous claims under Georgia law and requesting damages, or, in the alternative, reformation of the settlement agreement to adjust the price of the warrants.[4] The district court denied the motion, holding that it no longer retained authority or jurisdiction over the settlement.[5] The appellants appealed that decision, but this court affirmed the district court's denial of the motion for lack of jurisdiction.[6]

After filing their notice of appeal, the appellants filed this suit against Coram and several of its officers, asserting claims for violation of (1) section 10(b) of the Securities Exchange Act of 1934 (the Exchange Act),[7] and Rule 10b-5;[8] (2) section 20(a) of the Exchange Act;[9] (3) state law claims of unlawful securities practices;[10] (4) state law claims of fraud by silence;[11] and (5) breach of the implied

---

[4]  See In re T2, 130 F.3d at 993.

[5]  Id. at 993-94.

[6]  Id. at 995.

[7]  15 U.S.C. § 78j(b).

[8]  17 C.F.R. § 240.10b-5.

[9]  15 U.S.C. § 78t(a).

[10]  O.C.G.A. § 10-5-12(a)(2).

[11]  O.C.G.A. § 51-6-4.

covenant of good faith and fair dealing.  They sought compensatory damages and an award of damages to reflect the difference in the value of the warrants from the price in the settlement and the closing price of Coram stock on the trading day following the announcement.

The district court dismissed the complaint under Fed.R.Civ.P. 12(b)(6), finding  that the settlement was a contract subject to the ordinary rules of contract construction,  and that the settlement contained a merger or "entire agreement" clause.   The district court relied on Georgia law holding that when the injured party sought damages rather than recission, a merger clause prevented recovery by estopping the claimant from asserting reliance on any misrepresentations or omissions made outside of the four corners of the contract. The district court found that because the plaintiffs specifically disavowed reliance on statements not included in the settlement documents, and could show no statements within the settlement documents by which they were defrauded, they failed to state a claim for securities fraud.  Because the appellants could not recover any relief on their federal claims, and thus no federal jurisdiction existed, the district court dismissed the state law claims. This appeal followed.

## DISCUSSION

This Court reviews *de novo* the dismissal of a complaint for failure to state a claim, accepting all allegations in the complaint as true and construing facts in a light most favorable to the plaintiff.[12] A complaint may not be dismissed unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief.[13]

**Federal securities claims**

To state a cause of action under Section 10b of the Exchange Act or Rule 10b-5, plaintiffs must be able to demonstrate reliance on a material misrepresentation or omission made either directly or through fraud on the market.[14] In their complaint, the appellants alleged that the statements were made or omitted from "public statements, press releases and filings with the Securities and Exchange Commission."

Appellants argue that their claims are governed by federal securities law, not by state contract law, and that a merger clause is insufficient to bar a claim

---

[12] Harper v. Thomas, 988 F.2d 101, 103 (11th Cir. 1993).

[13] Pataula Elec. Membership Corp. v. Whitworth, 951 F.2d 1238, 1240 (11th Cir. 1992), cert. denied, 506 U.S. 907, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992).

[14] See Basic, Inc. v. Levinson, 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988)(emphasis added).

5

under the Exchange Act for securities fraud. During oral argument, counsel for the appellants specifically alleged that the fraud occurred after the district court's order finalizing the settlement, disavowed any claim of fraud in the inducement, and argued that because the fraud occurred after the settlement, it was not barred by the merger clause. However, the allegations of fraud in the complaint specifically and repeatedly state that the misstatements and omissions of fact comprising the fraud occurred "[p]rior to the final determination of the exercise price of the Warrants."

The problem with the argument that the fraud occurred after the settlement was final is that appellants have failed to show the reliance necessary to state a cause of action for a federal securities fraud claim. Fraud occurring after the settlement would be irrelevant to any stock purchased by the appellants through the exercise of the warrants, because the warrants' price was fixed by the settlement. The price was arrived at through negotiation, and was not set by the market. Thus, in order to establish reliance, any claim for fraud that the appellants have necessarily would have had to occur by the time the settlement was made final.

Paragraph 10.7 of the settlement provides that the "Side Letter Agreement, Stipulation and the Exhibits attached hereto constitute the entire

6

agreement among the parties hereto and <u>no representations, warranties or inducements have been made to any party</u> concerning the Stipulation, the Exhibits or the Side Letter Agreement other than the representations, warranties and covenants contained and memorialized in such documents."[15]  The settlement agreement also contained a paragraph preventing any modification of the settlement based on judicial decisions, changes in the financial conditions of any of the parties, any newly discovered facts, events or allegations, or any other conduct which related to the settlement or the released claim.  Because the appellants allege that the statements that constituted fraud occurred outside of the settlement agreement, a cause of action could be maintained only if the merger clause in the agreement did not prohibit admission of those statements.

In a recent Supreme Court case, two suits were initiated on behalf of the stockholders of a Delaware corporation, MCA, Inc., after another corporation tendered an offer for the common stock of MCA.[16]  The first suit was a class action, filed in Delaware against MCA and its directors, alleging violations of Delaware law.[17]  While that action was pending, the second suit was brought in

[15]  Settlement Agreement ¶ 10.7 (emphasis added).

[16]  <u>Matsushita Elec. Indus. Co. Ltd. v. Epstein</u>, 516 U.S. 367, 369-70, 116 S.Ct. 873, 876, 134 L.Ed.2d 6 (1996).

[17]  <u>Id</u>. at 370, 116 S.Ct. at 876.

California, alleging violations of Securities and Exchange Commission Rules 10b-3 and 14d-10.[18] The California district court entered summary judgment for the defendants, and the plaintiffs appealed.[19] Before the appeal was heard, the first suit was settled.[20] The settlement included a release of all claims arising out of the acquisition.[21]

On appeal, the defendants/appellees invoked the Delaware judgment as a bar to further prosecution of the action, relying on the Full Faith and Credit Act, 28 U.S.C. § 1738. The Supreme Court agreed, holding that the Delaware settlement judgment was entitled to full faith and credit, notwithstanding the fact that it released claims within the exclusive jurisdiction of the federal courts.

The Court used a two-step analysis in reaching its decision. The Court first looked to state law to ascertain the rules regarding the preclusive force of class-action settlement judgments in subsequent suits.[22] The Court found that Delaware law held that the judgment barred subsequent pursuit of the claims, even though the federal securities claims could not have been pursued in the state

---

[18] Id.

[19] Id.

[20] Id.

[21] Id.

[22] Id. at 375-76, 96 S.Ct. at 878-879.

chancery court where the first suit was filed.[23] The Court then looked to the Exchange Act, and noted that although the Act conferred exclusive jurisdiction on federal courts for suits arising under it, it neither allowed "plaintiffs with Exchange Act claims to have more than one day in court to challenge the legality of a securities transaction" . . . nor prevented litigants "from voluntarily releasing Exchange Act claims in judicially approved settlements."[24]

Here, Georgia law regards a settlement as a contract.[25] Merger clauses are enforceable and may prevent parties from recovering for fraud, depending on the relief sought. Georgia law is clear that plaintiffs have two options available against a defendant for alleged misrepresentations in a contract action: a plaintiff can affirm the contract and sue for damages, in which case the merger clause applies, or the plaintiff can rescind the contract and sue in tort for alleged fraud, and the merger clause does not prevent introduction of parole evidence.[26] Because the appellants affirmed the contract and sued for damages, the merger clause

---

[23] Id. at 377, 96 S.Ct. at 880.

[24] Id. at 381, 96 S.Ct. at 881.

[25] See Southern Med. Corp. v. Liberty Mut. Ins Co., 216 Ga.App. 289, 291, 454 S.E.2d 180 (1995)("an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract."

[26] See e.g., Velten v. Regis B. Lippert, Intercat, Inc., 985 F.2d 1515, 1522 (11th Cir. 1993); Rampey v. Jay Pontiac GMC Truck, Inc., 211 Ga.App. 632, 440 S.E.2d 52 (Ga. Ct. App. 1993); City Dodge, Inc. v. Gardner, 232 Ga. 766, 208 S.E.2d 794 (Ga. 1974).

9

applies, and they are barred from introducing evidence outside the settlement documents. As the district court noted, the appellants did not allege that there was any fraud within the settlement documents, and thus, they have failed to state a claim.

The appellants rely on Meason v. Gilbert.[27] In Meason, the court found unenforceable an integration clause in a stock purchase agreement that no representations other than those contained in the prospectus induced the purchaser to buy certain securities.[28] The purchaser alleged that he had been induced to purchase the securities because of fraudulent oral misrepresentations, and sought rescission of the contract.[29] The court held that to allow a purchaser to waive all violations of the Georgia Securities Act by contract would eviscerate the protections of that statute, and that such a waiver would be void and without effect.[30] However, unlike the appellants, the purchaser in Meason sought rescission of the contract.

---

[27] 236 Ga. 862, 226 S.E.2d 49 (Ga. 1976).

[28] 226 S.E.2d at 51.

[29] Id. at 50.

[30] Id.

A case from the Second Circuit is analogous. In <u>Harsco Corp. v.</u>

<u>Segui</u>,[31] the purchaser of a company brought claims of securities fraud under Rule

10b-5 and state law claims against the company's seller.[32] The transaction had

been governed by a written agreement that contained a merger clause explicitly

precluding any claim of fraud based on representations not in the agreement.[33] The

district court held that the merger clause precluded the plaintiff from establishing

reasonable reliance, and the Second Circuit agreed.[34] The appellants attempt to

distinguish <u>Harsco</u> by arguing that the agreement in that case was more detailed,

but as the merger clause in the instant case is specific, this argument is not

persuasive.

Here, the settlement agreement contained a merger clause specifically

stating that the settlement and the attached exhibits constituted the entire

agreement, and that no representations, warranties, or inducement were made to

any party other than what was contained in the documents. The appellants did not

attempt to rescind the settlement, but elected to sue for damages on the contract,

---

[31] 91 F.3d 337 (2d Cir. 1996).

[32] <u>Id</u>. at 339.

[33] <u>Id</u>. at 342-43.

[34] <u>Id</u>.

rather than in tort. The merger clause governs, and the district court correctly found that the complaint failed to state a claim.

**State law claims**

The appellants also argue that the district court erred in dismissing their state law claims because they pleaded the necessary elements under state law. They raise this argument for the first time in their reply brief, in response to the appellee's contention that the district court properly dismissed the pendant state law claims. Arguments raised for the first time in a reply brief are not properly before this court.[35] Moreover, the district court did not abuse its discretion in deciding that because the appellants' federal claim failed, the state law claims should be dismissed at that early stage of the lawsuit.[36]

The district court's order is AFFIRMED.

---

[35] United States v. Martinez, 83 F.3d 371, 377 n.6 (11th Cir. 1996), cert. denied, --- U.S. —, 117 S.Ct. 998, 136 L.Ed.2d 877 (1997).

[36] See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 372 n.11, 98 S.Ct. 2396, 2402 n.11, 57 L.Ed.2d 274 (1978) (state claim could be heard in federal court only if an anchoring federal claim extended the district court's jurisdiction over the state claim).