[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 10, 2005
THOMAS K. KAHN
CLERK

No. 04-15995
Non-Argument Calendar
_____

D.C. Docket No. 03-00057-CV-DF-5

LARRY EDWARD STEPHENS,

Plaintiff-Appellant,

versus

STATE BOARD OF PARDONS & PAROLES,
GEORGIA DEPARTMENT OF CORRECTIONS,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Middle District of Georgia

_____

(June 10, 2005)

Before TJOFLAT, DUBINA, and CARNES, Circuit Judges.

PER CURIAM:

When Larry Edward Stephens committed his crime and was convicted, the

Georgia State Board of Pardons and Paroles had a policy that inmates had to serve one-third of their sentences before they were eligible for parole. While Stephens was still incarcerated a harsher policy was enacted. That policy required that inmates serve 90% of their sentences before they become eligible for parole. Stephens, proceeding pro se, filed a 42 U.S.C. § 1983 action against the Board and the Georgia Department of Corrections, alleging that the Board had retroactively applied the harsher policy to him in violation of the Ex Post Facto Clause. On their motion, the district court granted the defendants summary judgment. Stephens appealed.

## I.

In September 1992 Stephens was found guilty, but mentally ill, of the October 1991 voluntary manslaughter of his father, Elza Ray Stephens, and of possession of a firearm during the commission of a crime. Stephens was sentenced to twenty years in prison for the voluntary manslaughter conviction and a consecutive five year term of imprisonment for the firearm conviction.

In June 1993 the Board used its Parole Decision Guidelines to calculate a guidelines recommendation for parole in July 1999. The Board voted to deviate from the recommendation and set Stephens' Temporary Parole Month as July 2002. The Board deviated because it concluded that the crime severity level

2

assigned to him (VI) did not adequately reflect the severity of Stephens' crime.

The day after the Board wrote to Stephens that it had set his TPM as July 2002, the Superior Courts Sentence Review Panel reduced Stephens' sentence to ten years imprisonment for the voluntary manslaughter. That meant that his sentence was fifteen years instead of twenty-five. Stephens explains that he was eligible for the reduced sentence because of his honorable service in the military.

A few months later, in September 1993, the Board reconsidered Stephens' case in response to the reduced sentence. The Board did not change its recommendation, but did make a small adjustment based on "jail time" earned. Stephens' new TPM was December 2001.

Four years after Stephens' TPM was set for December 2001, the Board implemented a new policy that inmates would have to serve 90% of their sentences (instead of one-third) before they would be eligible for parole. The policy was enacted in December 1997 and was to apply only to certain violent offenders who committed their crimes on or after January 1, 1998. There was no action on Stephens' case for the first three years after the policy took effect.

It was as Stephens' TPM approached that the Board reconsidered his case in March and April of 2001. At that time, it set a new TPM of March 2005. In the Board's letter to Stephens, it said that the reason for the change was that releasing

him on parole "would not be compatible with the welfare of society."

A year later, the Board reevaluated the case and reset Stephens' TPM to January 2005, which is two months sooner. Stephens was apparently paroled in early 2005.[1] Accordingly, Stephens was incarcerated from about October 1991 to about January 2005, or for about thirteen years and three months. Ninety percent of a fifteen year sentence is thirteen and a half years.

Most of these facts have been taken from the affidavit and attached documentation provided by Tracy Masters, Director of Legal Services for the Board. Masters reviewed Stephens' file and "concluded that on each occasion when [Stephens'] case was presented to the Parole Board, all computations and recommendations have been without regard to the Parole Board's 90% policy." Affidavit at ¶ 11.

## II.

Because Stephens is proceeding pro se, we liberally construe his pleadings and arguments. Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). We review a district court's grant of summary judgment de novo, applying the same standards utilized by the district court. S.E.C. v. Adler, 137 F.3d 1325, 1332 (11th

---

[1] Though Stephens has been paroled, his case is not moot because he is seeking money damages in addition to equitable relief. See Francis v. Fox, 838 F.2d 1147, 1149 n.6 (11th Cir. 1988).

Cir. 1998).

### III.

The U.S. Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law . . . ." U.S. Const. Art. I, § 10. The Supreme Court has held that "the Clause is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504, 115 S. Ct. 1597, 1601 (1995) (internal citations omitted). Retroactive changes to the laws governing the parole of prisoners may sometimes violate the Ex Post Facto Clause. Garner v. Jones, 529 U.S. 244, 250, 120 S. Ct. 1362, 1367 (2000).

"Two elements must be present before a court can find an ex post facto violation: [f]irst, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." United States v. Lozano, 138 F.3d 915, 916 (11th Cir. 1998) (internal marks and citations omitted).

Stephens has not demonstrated that the harsher 90% policy was applied to him. The record shows that some of the decisions affecting Stephens' TPM were made before the 90% policy was established. And nothing in the record indicates that the TPM decisions made after the effective date of the 90% policy were

5

affected by that policy. Although Stephens now complains about a lack of discovery and the district court's failure to convene a hearing, he failed to raise these issues in the district court and will not be permitted to raise them for the first time on appeal. See Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1544 (11th Cir. 1994).

Stephens' unsupported assertions that the harsher 90% policy was applied to him are insufficient to survive the defendants' motion for summary judgment.

**AFFIRMED.**[2]

---

[2] In his reply brief on appeal, Stephens invokes the Due Process Clause. Stephens did not include a Due Process claim in his complaint, and he never moved to amend his complaint to include it. He first argued Due Process in the district court in response to the defendants' motion for summary judgment. That is insufficient. See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314–15 (11th Cir. 2004).

Moreover, even if the Due Process claim had been properly raised in the district court, it is not properly before this Court because Stephens raised it for the first time in his reply brief. See Hall v. Coram Healthcare Corp., 157 F.3d 1286, 1290 (11th Cir. 1998).