[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 25, 2006
THOMAS K. KAHN
CLERK

No. 05-12997
Non-Argument Calendar
_____

D. C. Docket No. 03-02497-CV-JMF-1

LANIKIA MCCLOUD,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 25, 2006)**

Before TJOFLAT, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Lanikia McCloud appeals the magistrate judge's affirmance of the Social

Security Commissioner's denial of Supplemental Security Income benefits. For the reasons that follow, we affirm on several issues and reverse and remand on the remaining issues.

## I. Background

McCloud filed an application for Supplemental Security Income ("SSI") benefits on June 12, 2000, alleging that she had been disabled June 1, 1998. At the time of her claim, McCloud was a twenty-three year old female with a GED and past work experience as a cashier, telemarketer, and nursing assistant.

According to the disability report that she submitted with her claim, McCloud reported that she was depressed and anxious. She also noted that she suffered from ulcers and trichotillomania[1] and that although her depression had prevented her from working since July 1, 1999, she was uninterested in rehabilitative services that could help her return to work. According to McCloud, she lived with her four children and spent her days watching television, listening to music, and cleaning and cooking. She could wash the dishes and shop for

---

[1] The DSM-IV diagnostic criteria for trichotillomania are: (1) recurrent pulling out of one's hair, resulting in noticeable hair loss, (2) an increasing sense of tension immediately before pulling out the hair or when attempting to resist the behavior, (3) pleasure, gratification, or relief when pulling out the hair, (4) the disturbance is not better accounted for by another mental disorder and is not caused by a general medical condition (e.g., a dermatologic condition), and (5) the disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 609 (4th ed. 1994).

groceries, but otherwise would lie on the couch and drink alcohol. She explained that she had anger problems and temper tantrums, snapped at people, and was abused by her husband.

In December 1998, McCloud was admitted to St. Francis Hospital for treatment for depression, alcohol use, and post-traumatic stress disorder. She reported being raped twice that year and stated that she was "falling apart" and experiencing tantrums. The staff noted that she experienced poor insight and suicidal ideation. Her GAF score was 30.[2] She received therapy and medications for anxiety and depression. By discharge a week later, her GAF score was 45, and she exhibited better insight, although she remained depressed. The staff at St. Francis noted that she was clean and groomed, but anxious, stressed, restless, and easily distracted and that her affect was restricted. They considered her to have an extreme potential for dangerous behavior with a serious impairment to her ability to function as reflected by the GAF score.

From April through June 2000, McCloud visited a shelter for battered women. In May 2000, McCloud visited Presbyterian University Hospital for depression and panic attacks. Her vital signs were normal, and she was alert and

---

[2] The Global Assessment of Functioning, or GAF Scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision, 4th ed. 2000).

oriented to time, place, and person. She was discharged from the hospital with Paxil and Ativan and instructed to follow-up with the outpatient clinic. In June 2000, Dr. Edward Friedman of Western Psychiatric Institute examined McCloud. She had a GAF score of 48 and reported that she had three different personalties. She denied any suicidal ideation, but reported being very stressed, using alcohol, and discontinuing use of Paxil without her doctor's approval. Friedman noted that McCloud was cooperative, but exhibited minimal eye contact and flat affect, with poor concentration, sadness, dramatic behavior, and anxiety.

In August 2000, Dr. T. David Newman, a consulting psychologist for McCloud's claim, evaluated McCloud. He listed her as suffering from depression, anxiety, mood swings, borderline personality disorder, and trichotillomania, with a history of sexual, drug, and alcohol abuse. McCloud denied suicidal ideation, and Newman found that her claim of multiple personalities lacked credibility. He noted that she had adequate hygiene and grooming, good eye contact, mild anxiety, and was alert, cooperative, and responsive, but he noted mild limitations in her range of affect and mild interference with concentration and memory. He believed her speech was rational, relevant, and coherent. Newman found that McCloud was capable of adjusting her behavior according to need but that she was not motivated to do so and that she could handle day-to-day necessities of household and

4

parenting chores, but not for prolonged periods because of the highly stressful circumstances. He further noted that she may tend to become periodically overwhelmed by her mood state, anxiety, or both and that she had a marginal ability to interact with others. Nevertheless, Newman concluded that McCloud had good ability to follow work rules and use judgment and a fair to good ability to relate to coworkers and the public, interact with supervisors, work independently, and maintain concentration. McCloud could understand and execute simple instructions or detailed – but not complex – instructions. Newman also found slight limitations in activities of daily living, moderate limitations with maintaining social function or regular attendance, and the ability to complete a normal work week without psychological interruptions. He further found that McCloud experienced one of two decompensations in work-like settings.

Dr. Roger Glover, a state agency psychologist, reviewed McCloud's information and determined that McCloud was alert and oriented and could care for her own activities. Like Newman, Glover determined that McCloud had moderate limitations with her ability to remember, understand, and execute detailed instructions, moderate limitations in maintaining concentration, social function, or regular attendance, and the ability to complete a normal work week without psychological interruptions. He further found that McCloud had moderate

5

limitations in her ability to respond to changes in the workplace setting and to make plans independently of others. According to Glover, McCloud was mentally capable of performing routine work in a stable work setting.

McCloud's claim for SSI benefits was denied initially, and she requested a hearing before an administrative law judge ("ALJ"). In the paperwork that accompanied the request and the notice of the hearing, the Commissioner advised McCloud that she was entitled to representation. The Commissioner also enclosed a leaflet with information and a list of groups that could assist with finding representation. Additionally, McCloud received a letter advising her of her right to representation; the text appeared in capital letters.

At the beginning of the SSI hearing on April 5, 2001, the ALJ noted that McCloud did not have counsel or a representative and stated that he assumed that she wanted to proceed without counsel. McCloud stated that she wanted to proceed without counsel. McCloud testified that she was twenty-four years old with a GED and past work experience as a cashier, telemarketer, and nursing assistant. She explained that she had been unable to keep her previous jobs for more than a few weeks because she had an anger problem, could not follow work rules, was very sensitive, and cried easily. She stated that she could not deal with people, had emotional problems, suffered from bad nerves, drank regularly, and

6

pulled out her hair because of stress. The ALJ called a vocational expert ("VE") to determine whether there were jobs available in significant numbers in the national economy that McCloud could perform and asked the VE whether a person with McCloud's background and residual functioning capacity ("RFC") could work.[3] The VE stated no because all jobs require some ability to work with people and McCloud testified that she was unable to deal with other people. The ALJ then asked if his answer would change if the RFC were limited to low-stress work. The VE testified that such a person could work in assembly, packing, and inspection jobs. When the ALJ asked McCloud whether she wanted to question the VE, McCloud explained that she did not know what to ask and reminded the ALJ of her anger problems and her desire not to be around others. McCloud then suggested that the ALJ may want to hear testimony from her husband, but the ALJ declined, saying "[y]ou told us everything about your situation."

The ALJ found that McCloud was not disabled because, although her mood disorder and anxiety were severe, they did not meet or exceed a listing, as she did not have "marked" limitations in two or more of the "B" categories. The ALJ noted that he considered all her symptoms, including pain, and he noted that her GAF score had been 30 at admission, which indicated a serious impairment, but

---

[3] The regulations define RFC as "that which an individual is still able to do despite the limitations caused by his or her impairments." 20 C.F.R. § 404.1545(a).

7

was 45 at discharge, which was only "moderate." The ALJ further considered that McCloud had not received treatment in 1999 or 2000 until her May 2000 panic attack. The ALJ found that McCloud's testimony at the hearing lacked credibility because of her failure to seek treatment or take her medications and her ability to handle activities of daily living. Accordingly, the ALJ determined that McCloud did not have physical limitations and could perform low-stress work.

McCloud initially requested review by the appeals council, and while the claim was pending, she obtained counsel. Because of a pilot program, the appeals council refused to hear the case but granted an extension to file a complaint in district court. McCloud filed a complaint in district court and consented to the jurisdiction of a magistrate judge. She raised many of the same claims she now raises before this Court, and the magistrate judge affirmed the Commissioner's decision to deny benefits in its entirety.

## II. Standard of Review

We review the Commissioner's decision to determine whether substantial evidence supports the decision and whether the Commissioner applied the correct legal standards. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). We do not reweigh evidence or substitute our judgment for that of the Commissioner, but review the entire record

8

to determine whether the decision is reasonable and supported by substantial evidence. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (stating that substantial evidence is "'more than a mere scintilla but less than a preponderance'").

### III. Discussion

The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proved that she is disabled. 20 C.F.R. § 404.1520. First, the claimant must prove that she is not engaged in substantial gainful activity. Id. Second, she must prove that she has a severe impairment or combination of impairments. Id. Third, if the claimant proves that she has a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry. If the claimant fails at the third step, she must proceed to the fourth step and prove that she is unable to perform her past relevant work.[4] Fifth, the burden shifts to the Commissioner to

---

[4] At this step, the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. §

9

determine whether the national economy has a significant number of jobs that the claimant is able to perform. If the Commissioner meets this burden, the claimant must prove that she is unable to perform those jobs in order to be found disabled.

On appeal, McCloud raises seven issues: (1) whether the ALJ properly advised her of her right to counsel; (2) whether the ALJ fulfilled his duty to develop the record when he excluded the husband's testimony, conducted a cursory hearing, and did not obtain records from other medical sources; (3) whether the ALJ properly applied medical terminology concerning her GAF score to determine whether she had any moderate limitations; (4) whether the ALJ properly considered the consulting psychologist's report; (5) whether the ALJ properly considered the report from the state agency's doctor, as required under SSR 96-6p; (6) whether the ALJ posed a proper hypothetical to the VE; and (7) whether the magistrate judge properly denied the motion to remand under sentence six based on the husband's affidavit.

1. *Whether the ALJ Properly Advised McCloud of Her Right to Counsel*

McCloud asserts that the ALJ failed to inform her of her right to counsel sufficiently for her to have knowingly waived that right. She argues that the

---

404.1520(a)(4)(iv). The regulations define RFC as "that which an individual is still able to do despite the limitations caused by his or her impairments." 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e).

Commissioner has failed to show that she received the written notices informing her of her right to counsel or that she signed the waiver of counsel form. Furthermore, she asserts that her limited education and mental abilities and the ALJ's failure to tell her that she could obtain counsel for free or on a contingency fee basis or to ensure that she had received the notices demonstrate that her verbal waiver at the hearing was not made knowingly.

"A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before the ALJ." Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). "If there has been a waiver of counsel, the claimant must show 'clear prejudice or unfairness' caused by lack of counsel in order to prove that he was denied a full and fair hearing and is entitled to a remand to the Secretary." Kelley v. Heckler, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985).

First, we do not consider McCloud's claims that the Commissioner failed to show that she received the notices or that the ALJ's advice at the hearing was insufficient because she raised those arguments for the first time on appeal and in the reply brief respectively. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004); Hall v. Coram HealthCare Corp., 157 F.3d 1286, 1290 (11th Cir. 1998).

When we view the waiver in the context of the entire hearing, we conclude

11

that there is no evidence that McCloud failed to understand her right. At the hearing, McCloud gave consistent testimony about her medical condition and activities of daily living. Nothing about her communication would have indicated that she did not understand the right to counsel or her waiver of that right. Consequently, we hold that McCloud knowingly waived her right to counsel, and she cannot show that she suffered prejudice from the lack of representation.[5]

2. *Whether the ALJ Fulfilled His Duty to Develop the Record When He Excluded McCloud's Husband's Testimony, Conducted a Cursory Hearing, and Did Not Obtain Records from Other Medical Sources*

McCloud argues that the ALJ failed to fulfill his duty to develop the record on three occasions. She contends that evidence from non-medical sources such as family members is desirable and that the ALJ should have permitted her to present this favorable, corroborating evidence. She contends that the evidence was critical because her credibility was questioned. She further asserts that a reviewing court should not evaluate this factual evidence. McCloud also argues that the ALJ erred by conducting a cursory hearing and failing to question her sufficiently about her disabilities. Finally, McCloud asserts that the ALJ failed to obtain records from

---

[5] Because we reject McCloud's claim about being properly advised of her right to counsel, we also reject her arguments that we should view her other claims with greater scrutiny because she did not knowingly and voluntarily waive counsel or because she lacked counsel.

several hospital visits, all of which occurred within twelve months from the date of the application, and should have subpoenaed the records.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). Consequently, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole, including "(1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by (a spouse) . . ., and (4) the claimant's age, education, and work history." DePaepe v. Richardson, 464 F.2d 92, 94 (5th Cir. 1972). Additionally, the claimant has the burden of producing evidence to support her disability claim. Ellison, 355 F.3d at 1276.

A. Husband's Testimony

The failure to produce other material does not rise to the level of a constitutional violation if the ALJ had sufficient evidence on which to base his decision. In determining that the husband's testimony was unnecessary, the ALJ explained that McCloud's testimony lacked credibility and was unsupported by the medical evidence. Cf. Walden v. Schweiker, 672 F.3d 835, 839-40 (11th Cir.

13

1982).  When the medical evidence supports the ALJ's determination, the ALJ does not err by refusing to admit lay testimony.  Laundry v. Heckler, 782 F.2d 1551, 1554 (11th Cir. 1986).  At any rate, any error in the exclusion of the husband's testimony was harmless.

B.  The Hearing

We have held that even when the hearing was "less than totally satisfactory," remand is unwarranted unless the claimant can show prejudice.  Kelley v. Heckler, 761 F.2d 1538, 1540-41 (11th Cir. 1985).  McCloud cannot show prejudice.  The evidence showed that she suffered anxiety and depression but discontinued use of her medication and failed to seek treatment for over a year preceding her application for SSI benefits.  Given her non-compliance and lack of treatment, the ALJ properly concluded that the medical evidence refuted McCloud's complaints and that he did not need to elicit further testimony.

C.  Medical Records

Under 20 C.F.R. § 416.912(d), the Commissioner will "develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[s] [the] application."  Nevertheless, the burden is on the claimant to show that she is disabled and, therefore, she is responsible for producing evidence to support her application.  20 C.F.R. § 416.912(a); 20 C.F.R.

14

§ 416.912(c); Ellison, 355 F.3d at 1276.

First, there is no evidence that McCloud obtained treatment from St. Francis or Western Psychiatric Institute after the dates submitted or, if such treatment occurred, that she attempted to obtain the records. According to the record, the Commissioner attempted to obtain the records from the women's shelter, but the shelter refused to release them. The Commissioner notes that McCloud obtained counsel in 2001, and neither McCloud nor counsel attempted to obtain the records; nor did McCloud sign a release to permit access to the records. Instead, McCloud asserts that the ALJ should have subpoenaed the records. McCloud failed to meet her burden of producing evidence to support her claim.

To the extent McCloud contends that the ALJ should have obtained records for treatment of which there is no evidence in the record, McCloud was in the best position to inform the ALJ as to her treatment history, and by failing to do so, she failed to meet her burden. Finally, to the extent that McCloud asserts that the ALJ erred in failing to obtain records from 1998, those records are outside the twelve months preceding the date of the application. Therefore, the ALJ was not under a duty to include them in the record.

3. *Issues 3-6*

We group Issues 3-6 together because we conclude that the ALJ erred when

dealing with these issues and that the errors warrant remand. First, the parties agree that the ALJ erred when he labeled McCloud's 1998 GAF score as reflective of moderate symptoms. In fact, a GAF score of 41-50 indicates severe impairments. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 1994). We are unable to determine from the record what weight the ALJ placed on the GAF score of 45; therefore, we reject the Commissioner's argument that any error was harmless. With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score. In addition to this error, the ALJ failed to consider McCloud's GAF score of 48 from June 2000, which occurred just days before she filed for SSI benefits, when determining whether she was disabled. On remand, the ALJ must also consider what, if any, weight to accord McCloud's June 2000 GAF score.

Second, McCloud argues that the ALJ failed to consider all of Dr. Newman's report. Newman found that McCloud would be unable to sustain concentration and work for extended periods of time, but the ALJ discredited that finding when adopting Newman's finding that "the claimant has . . . moderate deficiencies in concentration, persistence, or pace . . . ." The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion.

16

Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983).  The ALJ is required, however, to state with particularity the weight he gives to different medical opinions and the reasons why.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  Here, the ALJ neither explained the weight that he gave to Newman's report nor why he discredited Newman's findings regarding McCloud's ability to engage in prolonged work.  On remand, the ALJ must make these determinations.

Third, McCloud argues that the ALJ ignored the findings made by Glover, the state agency's doctor.  Under 20 C.F.R. § 404.1527(f)(2)(i)-(ii), the ALJ must consider non-examining, reviewing State psychologists' opinions and, when the ALJ does not give controlling weight to a treating source, must explain the weight given to the State psychologist's opinions.  Here, the ALJ relied on Glover's report to refute medical evidence, including McCloud's GAF score, from McCloud's treating physicians.  Consequently, the ALJ ran afoul of 20 C.F.R. § 404.1527(f)(2)(i)-(ii) when he did not explain the weight he gave to Glover's opinions.  On remand, the ALJ must make this determination.

Fourth, McCloud argues that the hypothetical the ALJ posed to the VE was insufficient because it merely limited her impairments to low stress jobs, thereby failing to include all her impairments.  When the ALJ poses a hypothetical question

17

to a VE, that question must include "all the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). The ALJ poses the questions to determine whether someone with the same limitations as the claimants will be able to secure employment in the national economy. Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). Here, the hypothetical included all the limitations, and the VE stated that, under those circumstances, such a claimant would not be able to obtain employment in the national economy. The ALJ then asked whether the VE's answer would change if the hypothetical person could perform low stress work. This hypothetical may have included all McCloud's impairments, but because the ALJ failed to include the GAF score and was unclear in the weight he accorded Glover's and Newman's medical opinions, the hypothetical might have been insufficient. Accordingly, on remand, the ALJ must determine whether his previous hypothetical is sufficient in light of his decisions regarding the GAF score and Glover's and Newman's testimony.

4. *Whether the Magistrate Judge Properly Denied the Motion for Remand Under Sentence Six Based on the Husband's Affidavit*

As an alternative to remand under sentence four of 42 U.S.C. § 405(g), McCloud argues that the magistrate judge erred when he denied her motion for remand under sentence six of 42 U.S.C. § 405(g). We review the magistrate

18

judge's decision <u>de novo</u>.  <u>Cherry v. Heckler</u>, 760 F.2d 1186, 1194 (11th Cir. 1985).

In order to demonstrate that a remand is necessary "the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." <u>Caulder v. Bowen</u>, 791 F.2d 872, 877 (11th Cir. 1986) (citation omitted); 42 U.S.C. § 405(g).

Here, the magistrate judge properly denied the motion to remand under sentence six.  To the extent that the evidence addressed McCloud's history of depression and anger problems, it was cumulative.  To the extent that the evidence might have shown that the problem is escalating, the evidence does not necessarily relate to the time period on or before the date of the ALJ's decision.  Moreover, McCloud has failed to show a reasonable possibility that the outcome would have been different had the ALJ considered this evidence.

## IV. Conclusion

For the foregoing reasons, we AFFIRM on Issues 1, 2, and 7 and VACATE and REMAND to the district court on Issues 3-6 with instructions to return the case to the Commissioner for further proceedings consistent with this opinion.

19